2016R00367,368,402/JTE/JNM/DAW

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 17- CR-208 (SRC) |
| | : | |
| v. | : | |
| | : | 18 U.S.C. §§ 371, 1343, 1346, 1952(a)(1)&(3), 1956, 2 |
| AIMAN HAMDAN, | : | |
| KRISTINA HAMDAN, and | : | 42 U.S.C. § 1320a-7b(b)(1)(A)&(B) |
| YOUSEF ZIBDIE | : | |

I N D I C T M E N T

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

**COUNT ONE**

(Conspiracy to Violate the Federal Anti-kickback Statute, Travel Act and to Defraud Patients of Honest Services)
(All Defendants)

1. Unless otherwise indicated, at all times relevant to this Indictment:

a. Biodiagnostic Laboratory Services, LLC ("BLS") was a clinical blood laboratory headquartered in Parsippany, New Jersey that, among other things, performed tests on the blood specimens of patients referred to BLS by medical doctors, and then billed others for those tests and related services.

b. The Medicare Program ("Medicare") was a federal program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. Medicare was a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b). Individuals who receive benefits under Medicare are commonly referred to as "Beneficiaries."

c. The Medicare Part B program was a federally funded supplemental insurance program that provided supplementary Medicare insurance benefits for individuals aged sixty-five or older, and certain individuals who are disabled. The Medicare Part B program paid for various medical services for Beneficiaries, including blood tests and related services.

d. BLS was an approved Medicare provider, and Medicare paid BLS for performing blood tests and related services performed for Beneficiaries who had been referred to BLS by doctors participating in Medicare.

e. BLS billed, and was paid by, various private health care insurance companies (collectively, the "Private Insurers") in the business of providing health care insurance to individuals and entities under various insurance policies (the "Insureds"), pursuant to which the Private Insurers paid BLS for

blood tests and related services performed for Insureds who had been referred to BLS by doctors.

f. BLS paid sales representatives a commission based on the amount of revenue received by BLS from Medicare and the Private Insurers for the performance of blood tests and related services performed on blood specimens referred to BLS by doctors the sales representatives recruited or serviced.

g. David Nicoll, who is a co-conspirator not charged herein, was an owner and the President of BLS and generally exercised control over the operations of BLS.

h. Scott Nicoll, who is a co-conspirator not charged herein, was employed by and acted on behalf of BLS.

i. Juan Espindola, who is a co-conspirator not charged herein, was a doctor of pulmonology with a practice located in Clifton, New Jersey.

j. Defendant AIMAN HAMDAN was a doctor of cardiology with practices located in, among other locations, Fair Lawn, and Clifton, New Jersey. At all times relevant to the indictment, defendant AIMAN HAMDAN was married to defendant KRISTINA HAMDAN.

k. From November 2009 through April 2013, defendant KRISTINA HAMDAN was employed by and acted on behalf of

BLS. In addition, beginning in or about 2009, defendant KRISTINA HAMDAN caused the formation of an entity called MaxiCare, LLC.

1. Defendant YOUSEF ZIBDIE was a doctor of internal medicine with a practice in Woodland Park, New Jersey.

The BLS Bribery Scheme

2. Beginning prior to March 2006 and continuing through in or about April 2013, BLS routinely paid doctors bribes to induce them to refer the blood specimens of their Medicare and Private Insurer patients to BLS for testing.

3. During the BLS bribery scheme, BLS bribed doctors practicing medicine in New Jersey and in New York. To generate funds to pay bribes in a given month, BLS relied upon and used the monies generated by patient blood specimen referrals from doctors, wherever located, that had been obtained in prior months.

Defendants AIMAN HAMDAN,
KRISTINA HAMDAN and YOUSEF ZIBDIE

4. At all times relevant to this Indictment, defendant AIMAN HAMDAN, defendant YOUSEF ZIBDIE, and Juan Espindola were licensed medical doctors who owed a fiduciary duty to their patients. In addition, defendant AIMAN HAMDAN, defendant YOUSEF ZIBDIE, and Juan Espindola each had a duty of honest services to their patients that included the duty to

refrain from accepting, or agreeing to accept, bribes and
kickbacks offered in exchange for patient blood specimen
referrals.

5.    In or around September 2008, defendant AIMAN
HAMDAN requested and received from BLS a check for $500,000 to
be used for the purpose of acquiring additional medical
practices from which defendant AIMAN HAMDAN assured BLS that
additional patient blood samples would be, and were, referred to
BLS for testing. The funds were repaid to BLS in or about
November 2008.

6.    From at least as early as in or about September
2008, defendant AIMAN HAMDAN agreed with one or more persons
employed by and/or acting on behalf of BLS to refer the blood
specimens of his Medicare and Private Insurer patients to BLS
for testing in exchange for items of value.

7.    In addition, defendant AIMAN HAMDAN also agreed
to exert influence over medical practices that he owned,
controlled, and/or otherwise had influence over, in order to
induce the referral of Medicare and Private Insurer patient
blood samples to BLS for testing and in exchange for items of
value.  For example, in or around March 2010, defendant AIMAN
HAMDAN traveled with David Nicoll, Scott Nicoll, and others, by
private jet to Key West, Florida, for the purpose of fishing and

visiting strip clubs. All of defendant AIMAN HAMDAN's expenses were paid by BLS. BLS also paid for AIMAN HAMDAN to visit a strip club located in New York, New York with David Nicoll. In addition, BLS paid, at defendant AIMAN HAMDAN's request, thousands of dollars for dinner meetings of the New Jersey Chapter of a medical association of which defendant AIMAN HAMDAN served as President.

8. In or around the summer of 2009, defendant AIMAN HAMDAN, defendant KRISTINA HAMDAN, David Nicoll, and Scott Nicoll agreed that defendant KRISTINA HAMDAN would begin working for BLS and receive commissions based on, and in exchange for, patient blood samples referred to BLS by medical practices that defendant AIMAN HAMDAN owned, controlled, and/or exercised influence over.

9. In or around September 2009, defendant AIMAN HAMDAN, defendant KRISTINA HAMDAN, David Nicoll, and Scott Nicoll agreed to have defendant KRISTINA HAMDAN form the sham entity, MaxiCare, LLC, in an attempt to conceal and disguise the bribe payments to be paid on behalf of BLS by defendant KRISTINA HAMDAN to various doctors.

10. Beginning in or around November 2009 and continuing through in or about April 2013, defendant KRISTINA HAMDAN offered and paid various doctors, including but not

limited to defendant YOUSEF ZIBDIE and Juan Espindola, various kickbacks and bribes, including sham "consulting agreement" checks and payments for dinner parties, in order to induce doctors to refer patient blood specimens to BLS for testing.

11. BLS paid checks totaling more than $1.3 million to MaxiCare, LLC, which included commissions on patient blood referrals generated by defendant AIMAN HAMDAN and other doctors as well as money for bribes to be paid to various doctors by defendant KRISTINA HAMDAN. Defendant AIMAN HAMDAN and defendant KRISTINA HAMDAN used the proceeds of MaxiCare, LLC, for their personal, family, and household expenses. Defendant AIMAN HAMDAN did not advise his patients that he was receiving bribes in exchange for referring their blood specimens to BLS.

12. The referrals from defendant AIMAN HAMDAN and the medical practices that he that he owned, controlled, and/or had influence over enabled BLS to collect millions of dollars from Medicare and the Private Insurers.

13. From at least as early as in or about December 2009 through March 2013, defendant YOUSEF ZIBDIE agreed with defendant KRISTINA HAMDAN, Scott Nicoll, and others employed by and/or acting on behalf of BLS to refer the blood specimens of his Medicare and Private Insurer patients to BLS for testing in exchange for monthly bribe payments including checks and other

items of value. Defendant YOUSEF ZIBDIE did not advise his patients that he was receiving bribes in exchange for referring patient blood specimens to BLS.

14. The referrals from defendant YOUSEF ZIBDIE enabled BLS to collect more than $937,000 from Medicare and Private Insurers.

15. In or around the spring of 2011, defendant AIMAN HAMDAN recommended that Juan Espindola begin referring patient blood samples to BLS for testing. From at least as early as in or about April 2011 through June 2012, Juan Espindola agreed with defendant KRISTINA HAMDAN and others employed by and/or acting on behalf of BLS to refer the blood specimens of his Medicare and Private Insurer patients to BLS for testing in exchange for monthly bribe payments. Juan Espindola did not advise his patients that he was receiving bribes in exchange for referring his patient blood specimens to BLS.

16. The referrals from Juan Espindola enabled BLS to collect approximately $65,000 from Medicare and Private Insurers.

17. From at least as early as in or about September 2008 through in or about April 2013, in the District of New

Jersey, and elsewhere, defendants

AIMAN HAMDAN,
KRISTINA HAMDAN, and
YOUSEF ZIBDIE

did knowingly and intentionally conspire and agree with David Nicoll, Scott Nicoll, Juan Espindola, and others to commit offenses against the United States, that is:

a. to willfully solicit and receive remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, from BLS through one or more co-conspirators, in order to induce defendant AIMAN HAMDAN, defendant YOUSEF ZIBDIE, and Juan Espindola to refer patient blood samples and cause the referral of patient blood samples to BLS for the furnishing and arranging of items and services, and in return for arranging for and recommending the same, that is, the referral of patient blood specimens to BLS for testing and related services, for which payment was made in whole or in part under a Federal health care program, that is, Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(1)(A) and (B); and

b. to knowingly and intentionally travel in interstate commerce and use and cause to be used the mail and facilities in interstate commerce with intent to promote, manage, establish, carry on, distribute the proceeds of, and

facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of an unlawful activity, that is, commercial bribery, contrary to N.J.S.A. § 2C:21-10 and Title 18, United States Code, Section 1952(a)(1)and (a)(3) and, thereafter, to perform acts to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of such unlawful activity, contrary to Title 18, United States Code, Sections 1952(a)(1) and (3); and

c. to knowingly and intentionally devise a scheme and artifice to defraud the patients of defendant AIMAN HAMDAN, defendant YOUSEF ZIBDIE, and Juan Espindola of their right to their doctor's honest services and to transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, contrary to Title 18, United States Code, Sections 1343 and 1346.

Object of the Conspiracy

18. The object of the conspiracy was to illegally generate large sums of money for defendants AIMAN HAMDAN, KRISTINA HAMDAN, YOUSEF ZIBDIE, David Nicoll, Scott Nicoll, Juan Espindola, and others, by exchanging concealed bribes for

referrals of patient blood specimens that generated revenue for BLS.

Manner and Means of the Conspiracy

19. The manner and means by which defendant AIMAN HAMDAN, defendant KRISTINA HAMDAN, defendant YOUSEF ZIBDIE, David Nicoll, Scott Nicoll, Juan Espindola, and others sought to accomplish the object of the conspiracy included, among other things, the following:

a. In or around September 2008, defendant AIMAN HAMDAN requested and received from BLS a check for $500,000 to be used for the purpose of acquiring additional medical practices from which defendant AIMAN HAMDAN assured BLS that additional patient blood samples would be, and were, referred to BLS for testing.

b. Beginning in or around October 2008, defendant AIMAN HAMDAN, caused the referral of Medicare and Private Insurer patient blood samples to BLS from medical practices that he owned, controlled and/or had influence over in exchange for items of value.

c. Beginning in or around November 2009, BLS began paying defendant AIMAN HAMDAN and defendant KRISTINA HAMDAN via monthly checks to MaxiCare, LLC, in exchange for continued patient blood referrals from defendant AIMAN HAMDAN

and the medical practices that he owned, controlled and/or had influence over, as well as additional patient blood sample referrals from doctors such as defendant YOUSEF ZIBDIE and Juan Espindola who were also paid bribes by BLS.

d. It was further part of the conspiracy that, from in or about December 2009 through in or about August 2010, defendant KRISTINA HAMDAN and one or more co-conspirators offered, and defendant YOUSEF ZIBDIE accepted, bribes in the form of sham "rent" checks of approximately $1,188.02 per month to induce the referral of patient blood specimens to BLS (the "Zibdie Rent Bribes").

e. It was further part of the conspiracy that, from in or about December 2009 through in or about August 2010, defendant KRISTINA HAMDAN and one or more co-conspirators offered, and defendant YOUSEF ZIBDIE accepted, bribes in the form of sham "Service Agreement" checks of approximately $2,647.67 per month to induce the referral of patient blood specimens to BLS (the "Zibdie Service Agreement Bribes").

f. It was further part of the conspiracy that, beginning in or around the summer of 2010, certain of the bribes paid to doctors including defendant AIMAN HAMDAN, defendant YOUSEF ZIBDIE, and Juan Espindola began to be paid by BLS through sham LLC entities, such as MaxiCare, LLC.

g. It was further part of the conspiracy that, from in or about October 2010 through in or about March 2013, defendant KRISTINA HAMDAN and one or more co-conspirators offered, and defendant YOUSEF ZIBDIE accepted, bribes in the form of sham "Consulting Agreement" checks of approximately $1,500 per month to induce the referral of patient blood specimens to BLS (the "Zibdie Consulting Agreement Bribes").

h. It was further part of the conspiracy that, from in or about April 2011 through in or about June 2012, defendant KRISTINA HAMDAN offered, and Juan Espindola accepted, bribes in the form of sham "Consulting Agreement" checks of approximately $1,500 per month to induce the referral of patient blood specimens to BLS (the "Espindola Consulting Agreement Bribes").

i. It was further part of the conspiracy that various of the co-conspirators made efforts to track, by month: (i) the monies paid as bribes to defendant AIMAN HAMDAN, defendant YOUSEF ZIBDIE, Juan Espindola, and others; (ii) the blood tests defendant AIMAN HAMDAN, defendant YOUSEF ZIBDIE, Juan Espindola, and others, caused to be ordered and referred to BLS; and (iii) the revenue those blood tests generated for BLS.

Overt Acts

20. In furtherance of the conspiracy and in order to

effect the object thereof, defendant AIMAN HAMDAN, defendant KRISTINA HAMDAN, defendant YOUSEF ZIBDIE, and their co-conspirators committed or caused the commission of the following overt acts in the District of New Jersey and elsewhere:

a. On or about September 27, 2008, at defendant AIMAN HAMDAN's request, BLS paid approximately $9,000 for a dinner meeting of a medical association, the New Jersey chapter of which defendant AIMAN HAMDAN was President.

b. In or around September 2008, David Nicoll provided defendant AIMAN HAMDAN with a check for $500,000 to be used for the purpose of acquiring additional medical practices.

c. On or about March 28, 2011, BLS issued a check made payable to MaxiCare, LLC, in the amount of $31,412.18.

d. On or about April 11, 2011, defendant AIMAN HAMDAN and defendant KRISTINA HAMDAN caused the check referenced in Paragraph 20(c) above, to be deposited into a joint checking account held in the name of "Aiman and Kristina Hamdan."

e. On or about May 23, 2012, Juan Espindola caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

f. On or about June 7, 2012, at the direction of BLS and using funds provided by BLS, defendant KRISTINA

HAMDAN, on behalf of MaxiCare, LLC, issued an Espindola Consulting Agreement Bribe check in the amount of $1,500 made payable to Dr. Espindola.

g. On or about June 12, 2012, Juan Espindola caused the Espindola Consulting Agreement Bribe check referenced in Paragraph 20(f) above to be negotiated.

h. On or about June 26, 2012, at the direction of BLS and using funds provided by BLS, defendant KRISTINA HAMDAN, on behalf of MaxiCare, LLC, issued a Zibdie Consulting Agreement Bribe check in the amount of $1,500 made payable to defendant YOUSEF ZIBDIE.

i. On or about June 28, 2012, BLS received approximately $286 from Medicare via an interstate bank wire for patient blood tests ordered by Juan Espindola and processed by BLS, as referenced in Paragraph 20(e) above.

j. On or about July 23, 2012, defendant YOUSEF ZIBDIE caused the Zibdie Consulting Agreement Bribe check referenced in Paragraph 20(h) above to be negotiated.

k. On or about August 11, 2012, defendant YOUSEF ZIBDIE caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

l. On or about August 29, 2012, at the direction of BLS and using funds provided by BLS, defendant

KRISTINA HAMDAN, on behalf of MaxiCare, LLC, issued a Zibdie Consulting Agreement Bribe check in the amount of $1,500 made payable to defendant YOUSEF ZIBDIE.

m. On or about September 8, 2012, defendant YOUSEF ZIBDIE caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

n. On or about September 12, 2012, defendant YOUSEF ZIBDIE caused the check referenced in Paragraph 20(l) to be negotiated.

o. On or about September 24, 2012, BLS received approximately $93 from Medicare via an interstate bank wire for patient blood tests ordered by defendant YOUSEF ZIBDIE and processed by BLS, as referenced in Paragraph 20(k) above.

p. On or about October 5, 2012, BLS received approximately $125 from Medicare via an interstate bank wire for patient blood tests ordered by defendant YOUSEF ZIBDIE and processed by BLS, as referenced in Paragraph 20(m) above.

q. On or about October 12, 2012, defendant YOUSEF ZIBDIE caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

r. On or about October 22, 2012, at the direction of BLS and using funds provided by BLS, defendant KRISTINA HAMDAN, on behalf of MaxiCare, LLC, issued a Zibdie

Consulting Agreement Bribe check in the amount of $1,500 made payable to defendant YOUSEF ZIBDIE.

s.    On or about November 6, 2012, defendant YOUSEF ZIBDIE caused the check referenced in Paragraph 20(r) to be negotiated.

t.    On or about November 14, 2012, BLS received approximately $89 from Medicare via an interstate bank wire for patient blood tests ordered by defendant YOUSEF ZIBDIE and processed by BLS, as referenced in Paragraph 20(q) above.

u.    On or about November 26, 2012, at the direction of BLS and using funds provided by BLS, defendant KRISTINA HAMDAN, on behalf of MaxiCare, LLC, issued a Zibdie Consulting Agreement Bribe check in the amount of $1,500 made payable to defendant YOUSEF ZIBDIE.

v.    On or about December 1, 2012, defendant YOUSEF ZIBDIE caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

w.    On or about December 4, 2012, defendant YOUSEF ZIBDIE caused the check referenced in Paragraph 20(u) to be negotiated.

x.    On or about January 1, 2013, using funds provided by BLS, defendant KRISTINA HAMDAN, on behalf of

MaxiCare, LLC, issued a check made payable to cash in the amount of $1,500 bearing the memo "Consultation."

y. On or about January 7, 2013, BLS received approximately $47 from Medicare via an interstate bank wire for patient blood tests ordered by defendant YOUSEF ZIBDIE and processed by BLS, as referenced in Paragraph 20(v) above.

z. On or about January 22, 2013, defendant AIMAN HAMDAN endorsed and caused the check referenced in Paragraph 20(x) above to be negotiated.

aa. On or about January 25, 2013, defendant YOUSEF ZIBDIE caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

bb. On or about February 11, 2013, defendant YOUSEF ZIBDIE caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

cc. On or about March 20, 2013, BLS received approximately $91 from Medicare via an interstate bank wire for patient blood tests ordered by defendant YOUSEF ZIBDIE and processed by BLS, as referenced in Paragraph 20(aa) above.

dd. On or about April 5, 2013, BLS received approximately $108 from Medicare via an interstate bank wire for patient blood tests ordered by defendant YOUSEF ZIBDIE and processed by BLS, as referenced in Paragraph 20(bb) above.

All in violation of Title 18, United States Code, Section 371.

**COUNT TWO**

(Illegal Remuneration in Violation of
the Federal Anti-Kickback Statute)
(Defendants AIMAN HAMDAN and KRISTINA HAMDAN)

1. Paragraphs 1 through 16 and 18 through 20 of Count 1 of this Indictment are hereby incorporated and realleged as if fully set forth herein.

2. On or about June 12, 2012, in the District of New Jersey, and elsewhere, defendants

AIMAN HAMDAN and
KRISTINA HAMDAN

did knowingly and willfully solicit and receive remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, from BLS, in order to induce Juan Espindola to refer patients and cause the referral of patient blood samples to BLS for the furnishing and arranging for the furnishing of items and services, and in return for arranging for and recommending the same, that is, the referral of patient blood specimens to BLS for testing and related services, for which payment was made in whole or in part under a Federal health care program, that is, Medicare.

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and (B), and Title 18, United States Code, Section 2.

**COUNTS THREE THROUGH FIVE**

(Illegal Remuneration in Violation of
the Federal Anti-Kickback Statute)
(Defendants KRISTINA HAMDAN and YOUSEF ZIBDIE)

1. Paragraphs 1 through 16 and 18 through 20 of Count 1 of this Indictment are hereby incorporated and realleged as if fully set forth herein.

2. On or about the dates set forth below, in the District of New Jersey, and elsewhere, defendants

KRISTINA HAMDAN and
YOUSEF ZIBDIE

did knowingly and willfully solicit and receive remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, from BLS, in order to induce defendant YOUSEF ZIBDIE to refer patients and cause the referral of patients to BLS for the furnishing and arranging for the furnishing of items and services, and in return for arranging for and recommending the same, that is, the referral of patient blood specimens to BLS for testing and related services, for which payment was made in whole or in part under a Federal health care program, that is, Medicare, as follows:

| **Count** | **Approximate Date of Kickback/Bribe** |
|---|---|
| THREE | July 23, 2012 |
| FOUR | September 12, 2012 |
| FIVE | November 6, 2012 |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and (B), and Title 18, United States Code, Section 2.

**COUNT SIX**

(Use of the Mail and Facilities in Interstate Commerce and Interstate Travel to Promote, Carry On and Facilitate Commercial Bribery)
(Defendants AIMAN HAMDAN and KRISTINA HAMDAN)

1. Paragraphs 1 through 16 and 18 through 20 of Count 1 of this Indictment are hereby incorporated and realleged as if fully set forth herein.

2. On or about the date set forth below, in the District of New Jersey, and elsewhere, defendants

AIMAN HAMDAN and
KRISTINA HAMDAN

did knowingly travel in and use the mail and facilities in interstate commerce and cause the travel in and use of the mail and facilities in interstate commerce with the intent to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of an unlawful activity, that is, commercial bribery contrary to N.J.S.A. § 2C:21-10, and, thereafter, did perform and attempt to perform an act to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of such unlawful activity as follows:

| Count | Approximate Date | Travel or Use of Mail or Facility in Interstate Commerce | Acts Performed Thereafter |
|---|---|---|---|
| SIX | 6/28/12 | Interstate Wire, as set forth in Paragraph 20(i) of Count One | The Acts Set Forth in Paragraphs 20(l), 20(x) and 20(z) of Count One |

All in violation of Title 18, United States Code, Section 1952(a)(1) and (3), and Title 18, United States Code, Section 2.

**COUNTS SEVEN THROUGH NINE**

(Use of the Mail and Facilities in Interstate Commerce and Interstate Travel to Promote, Carry On and Facilitate Commercial Bribery)
(Defendants KRISTINA HAMDAN and YOUSEF ZIBDIE)

1. Paragraphs 1 through 16 and 18 through 20 of Count 1 of this Indictment are hereby incorporated and realleged as if fully set forth herein.

2. On or about the dates set forth below, in the District of New Jersey, and elsewhere, defendants

KRISTINA HAMDAN and
YOUSEF ZIBDIE

did knowingly travel in and use the mail and facilities in interstate commerce and cause the travel in and use of the mail and facilities in interstate commerce with the intent to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of an unlawful activity, that is, commercial bribery contrary to N.J.S.A. § 2C:21-10, and, thereafter, did perform and attempt to perform an act to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of such unlawful activity as follows:

| Count | Approximate Date | Travel or Use of Mail or Facility in Interstate Commerce | Acts Performed Thereafter |
|---|---|---|---|
| SEVEN | 9/24/12 | Interstate Wire, as set forth in Paragraph 20(o) of Count One | The Acts Set Forth in Paragraphs 20(q) and 20(s) of Count One |
| EIGHT | 10/5/12 | Interstate Wire, as set forth in Paragraph 20(p) of Count One | The Acts Set Forth in Paragraphs 20(u) and 20(w) of Count One |
| NINE | 11/14/12 | Interstate Wire, as set forth in Paragraph 20(t) of Count One | The Acts Set Forth in Paragraphs 20(v) and 20(x) of Count One |

All in violation of Title 18, United States Code, Section 1952(a)(1) and (3), and Title 18, United States Code, Section 2.

**COUNTS TEN THROUGH TWELVE**

(Scheme to Defraud Patients of Honest Services by
Defendant KRISTINA HAMDAN Paying, and
Defendant YOUSEF ZIBDIE Accepting, Concealed Bribes)
(Defendants KRISTINA HAMDAN and YOUSEF ZIBDIE)

1. Paragraphs 1 through 16 and 18 through 20 of Count 1 of this Indictment are hereby incorporated and realleged as if fully set forth herein.

2. At all times relevant to Counts Ten through Twelve of this Indictment, the patients of defendant YOUSEF ZIBDIE had an intangible right to his honest services as their doctor. Defendant YOUSEF ZIBDIE owed to his patients a duty to refrain from seeking and receiving bribes and kickbacks in exchange for his actions as their doctor.

3. From at least as early as in or about December 2009 through in or about April 2013, in the District of New Jersey, and elsewhere, defendants

KRISTINA HAMDAN and
YOUSEF ZIBDIE,

and others, knowingly and intentionally did devise and intend to devise a scheme and artifice to defraud his patients of their right to his honest services as their doctor.

3. The object of this scheme and artifice to defraud was for defendant YOUSEF ZIBDIE, defendant KRISTINA HAMDAN, and others, to deprive defendant YOUSEF ZIBDIE's patients of his honest services by defendant YOUSEF ZIBDIE accepting and

agreeing to accept concealed and undisclosed bribes and kickbacks from BLS, in exchange for his referral of patient blood specimens to BLS.

4.    To carry out the scheme and to effect its unlawful object, defendant KRISTINA HAMDAN, defendant YOUSEF ZIBDIE, and others, engaged in a number of means and methods, including those referred to in Paragraphs 1 through 16 and 18 through 20 of Count One.

5.    On or about the dates set forth below, in the District of New Jersey, and elsewhere, for the purpose of executing and attempting to execute this scheme and artifice to defraud, defendants

KRISTINA HAMDAN and
YOUSEF ZIBDIE,

and others, knowingly and intentionally transmitted and caused to be transmitted in interstate commerce by means of wire, radio, and television communication, certain writings, signs, signals, pictures, and sounds, as set forth below:

| Count | Approximate Date | Wire Transmission in Interstate Commerce |
|---|---|---|
| TEN | 1/7/13 | Medicare Payment to BLS via interstate bank wire, as set forth in Paragraph 20(y) of Count One |
| ELEVEN | 3/20/13 | Medicare Payment to BLS via interstate bank wire, as set forth in Paragraph 20(cc) of Count One |
| TWELVE | 4/5/13 | Medicare Payment to BLS via interstate bank wire, as set forth in Paragraph 20(dd) of Count One |

In violation of Title 18, United States Code, Sections 1343 and 1346, and Title 18, United States Code, Section 2.

**COUNT THIRTEEN**

(Conspiracy to Commit Money Laundering)
(All Defendants)

1. Paragraphs 1 through 16 and 18 through 20 of Count 1 of this Indictment are hereby incorporated and realleged as if fully set forth herein.

2. From November 2009 through April 2013, in Morris County, in the District of New Jersey, and elsewhere, defendants

AIMAN HAMDAN,
KRISTINA HAMDAN, and
YOUSEF ZIBDIE,

knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, did conspire and agree with others to conduct financial transactions affecting interstate and foreign commerce which in fact involved the proceeds of specified unlawful activity, specifically the transfer, delivery, and other disposition of United States currency that was the proceeds of the conspiracy described in Count 1 of this Indictment to bribe doctors to refer the blood specimens of their patients to BLS for testing and related

services, contrary to Title 18, United States Code, Section
1956(a)(1)(B)(i).

       In violation of Title 18, United States Code, Section
1956(h).

**FORFEITURE ALLEGATION AS TO COUNT ONE**

1. As a result of committing the conspiracy offense in violation of 18 U.S.C. § 371 as alleged in Count One of this Indictment, defendant AIMAN HAMDAN, defendant KRISTINA HAMDAN, and defendant YOUSEF ZIBDIE shall forfeit to the United States:

(a) Pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the conspiracy to violate 42 U.S.C. § 1320a-7b(b)(2)(A) as alleged in Count One of this Indictment;

(b) Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the conspiracy to violate 18 U.S.C. § 1952(a)(1) and (3) as alleged in Count One of this Indictment; and

(c) Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the conspiracy to violate 18 U.S.C. § 1343 and 1346 as alleged in Count One of this Indictment;

And all property traceable to such property.

**FORFEITURE ALLEGATION AS TO COUNT TWO**

2. As a result of committing the offense in violation of 42 U.S.C. § 1320a-7b(b)(2)(A) and (B) as alleged in Count Two, of this Indictment, defendant AIMAN HAMDAN and defendant KRISTINA HAMDAN shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense in violation of 42 U.S.C. § 1320a-7b(b)(2)(A) as alleged in such Count, and all property traceable to such property.

**FORFEITURE ALLEGATION AS TO COUNTS THREE THROUGH FIVE**

3. As a result of committing the offenses in violation of 42 U.S.C. § 1320a-7b(b)(2)(A) and (B) as alleged in Counts Three through Five of this Indictment, defendant KRISTINA HAMDAN and defendant YOUSEF ZIBDIE shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offenses in violation of 42 U.S.C. § 1320a-7b(b)(2)(A) as alleged in such Counts, and all property traceable to such property.

**FORFEITURE ALLEGATION AS TO COUNT SIX**

4. As a result of committing the offenses in violation of 18 U.S.C. § 1952(a)(1) and (3), as alleged in Count Six of this Indictment, defendant AIMAN HAMDAN and defendant KRISTINA HAMDAN shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses in violation of 18 U.S.C. § 1952(a)(1) and (3) as alleged in such Counts, and all property traceable to such property.

**FORFEITURE ALLEGATION AS TO COUNTS SEVEN THROUGH NINE**

5. As a result of committing the offenses in violation of 18 U.S.C. § 1952(a)(1) and (3), as alleged in Counts Seven through Nine of this Indictment, defendant KRISTINA HAMDAN and defendant YOUSEF ZIBDIE shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses in violation of 18 U.S.C. § 1952(a)(1) and (3) as alleged in such Counts, and all property traceable to such property.

**FORFEITURE ALLEGATION AS TO COUNTS TEN THROUGH TWELVE**

6. As a result of committing the offenses in violation of 18 U.S.C. §§ 1343 and 1346, as alleged in Counts Ten through Twelve, of this Indictment, defendant KRISTINA HAMDAN and defendant YOUSEF ZIBDIE shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses in violation of 18 U.S.C. § 1343 as alleged in such Counts, and all property traceable to such property.

**FORFEITURE ALLEGATION AS TO COUNT THIRTEEN**

7. As a result of committing the money laundering conspiracy offense in violation of 18 U.S.C. § 1956(h) as alleged in Count Thirteen of this Indictment, defendant AIMAN HAMDAN, defendant KRISTINA HAMDAN, and defendant YOUSEF ZIBDIE shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property, real and personal, involved in the money laundering conspiracy offense, and all property traceable to such property.

**SUBSTITUTE ASSETS PROVISION**
**APPLICABLE TO ALL FORFEITURE ALLEGATIONS**

8. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) (as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c)), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

A TRUE BILL

FOREPERSON

WILLIAM E. FITZPATRICK
ACTING UNITED STATES ATTORNEY

**CASE NUMBER:** 17-CR-208(SRC)

**United States District Court**
**District of New Jersey**

**UNITED STATES OF AMERICA**

**v.**

**AIMAN HAMDAN, KRISTINA HAMDAN, & YOUSEF ZIBDIE**

# INDICTMENT FOR

18 U.S.C. §§ 371, 1343, 1346, 1952(a)(1)&(3), 1956, 2
42 U.S.C. § 1320a-7b(b)(1)(A)

A True Bill,

Foreperson

**WILLIAM E. FITZPATRICK**
*ACTING U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

JOSEPH N. MINISH & DANIELLE ALFONZO WALSMAN
*ASSISTANT U.S. ATTORNEYS*
*(973)645-2700*

**USA-48AD 8**
**(Ed. 1/97)**